ALBERT PENN, Plaintiff, Appellant, v. NATURAL GAS PIPE LINE COMPANY, Defendant, Appellee, F. M. HAZEN et al., Intervenors, Appellees.

No. 44453.

AUGUST 5, 1938.

REHEARING DENIED NOVEMBER 18, 1938.

Reed & Elick, for appellant.

J. A. Devitt and George P. Garver, for defendant, appellee.

Thomas J. Bray, Allen Herrick, McMartin, Herrick & Langdon, and J. C. Eichhorn, for intervenors, appellees.

ANDERSON, J.—The appeal in this case involves practically an interpretation of admitted facts and documentary evidence. Briefly stated, the record discloses that during the year 1930, the title to the northeast quarter of a certain section of land in Marion County, Iowa, was in the intervenors Hazen; that the Hazens conveyed the same to the Mahaska County State Bank which held a mortgage on the real estate for a considerable amount. Prior to the conveyance to the bank and on October 18, 1930, the intervenors Hazen, who were the title holders, and the Mahaska County State Bank, which held the mortgage, executed a right of way easement to the Continental Construction Corporation (which is known now as The Natural Gas Pipe Line Company of America), defendant and appellee herein. The easement gave to the grantee a right of way three rods in width across the described property for the purpose of constructing a pipe line, and the instrument creating the easement contained the following: "In the event that the grantor, his heirs or assigns should open up a strip coal mine on the north eighty acres through which said pipe line is constructed, then the grantee agrees to purchase a strip of ground twenty rods wide, same being ten rods on either side of and parallel with said pipe line, at the rate of Three Hundred Dollars per acre. Or remove said pipe line. (Grantors reserve all mineral rights under said strip. Mineral rights not to effect said pipe line)." The instrument was made of record in Marion County on the 5th day of September, 1930. Subsequent thereto the Hazens, as title holders, conveyed the quarter section of land to the Mahaska County Bank, subject to said right of way easement. On the 5th day of September, 1933, the bank, as title holder, entered into a contract with Grover C. Hubbell and D. Cole McMartin and therein agreed to sell to Hubbell and McMartin the quarter section of land free and clear of all liens and encumbrances, except the pipe line easement and except the right of the Hazens to continue in the occupancy of the land until January 1, 1935. The bank agreeing in said contract that upon the payment to it of $15,000 it would execute a warranty deed for the premises to Hubbell and McMartin. Hubbell and McMartin agreed, in the same contract, that when the coal had been removed from said land they would convey it back to the bank by warranty deed, and the bank also, it seems, agreed with the Hazens that when and if it received the title back from Hub-

bell and McMartin that it would convey the same to Hazens. Hubbell and McMartin performed the provisions of said contract and received from the bank, through its receiver, a receiver's deed conveying the said property to them, subject to the conditions set out in the contract above referred to. Hubbell and McMartin also executed to Albert Penn, the plaintiff, appellant, herein, a lease of the coal rights under the surface of the said described quarter section of land for the term of three years or as long as coal is produced from the premises by the said Penn subject, however, to the pipe line easement. Said lease conveying to the said Albert Penn, "All of the coal that is or may underlie the surface of the following described tract of land within Marion County, Iowa, to-wit: (Quarter section described), subject to pipe line easement." This lease also gave to the plaintiff Penn the right to mine the coal by the strip mining method, and to occupy so much of the surface of the land as was necessary in so doing.

A strip mine was opened on the north eighty acres of said quarter section about the month of April, 1937. The plaintiff, appellant, Penn was advised about the last week of April, 1937, that the pipe line company should be notified of the fact that a strip mine was opened or being opened, and that it should make its election whether it would remove its pipe line or purchase the twenty rod strip. Penn was also advised not to cut into the twenty rod strip until the pipe line company had been given time to make its election. There had been no cut in the twenty rod strip at that time. Later the pipe line company was notified to make its election and, on the 28th day of June, 1937, elected to purchase the twenty rod strip through the land involved in this litigation. In the intervening time, however, Penn or his agent had made an excavation in the twenty rod strip. The plaintiff Penn claiming and alleging that he had title to the twenty rod strip, commenced this action against the pipe line company demanding payment of the $6,000 purchase price due from the pipe line company. The intervenors Hazen, Hubbell and McMartin, and Bates, as receiver of the bank, filed petitions of intervention each claiming that they were entitled to receive the $6,000. The defendant pipe line company filed its answer to the plaintiff's petition and the petitions of intervention stating that it is not concerned as to which of the parties intervening should receive the $6,000 purchase price and asking only that

it be given good title to the twenty rod strip, and that the court order the back-filling of all excavations made on said strip. The intervenors, by stipulation, agreed that in the event they were found to be entitled to the purchase price of $6,000 they would all join in instruments of conveyance necessary to convey title to the defendant pipe line company, and that they would determine their respective rights as to the $6,000 between themselves. The said stipulation, which was made a matter of record during the trial, also provided and asked that the plaintiff be required to back-fill the excavations which he had made upon the twenty rod strip within a specified time, and in the alternative that intervenors have a judgment against the plaintiff for such amount as might be found by the court necessary to expend for the purpose of making said back-fill, but that said back-filling be made before said $6,000 should be paid to intervenors. The decree provided that the intervenors should make the back-fill before they could receive the $6,000. In other words, the record establishes conclusively that the back-fill must be made before the defendant is required to pay the $6,000 purchase price, and the court found that the intervenors were entitled to the $6,000 upon the execution of proper conveyances to the pipe line company, and that the plaintiff should do the back-filling and, in the event of his failure so to do, judgment be entered against him in the sum of $1,500, the amount found by the court necessary to expend for the back-filling.

The questions to be determined apparently then are (1) what right, if any, does the plaintiff Penn have in the $6,000 purchase price, and (2) what provision, if any, is the pipe line company entitled to for the back-filling where encroachment has been made upon the twenty rod strip?

Taking up the first question it is at once apparent that whatever title or interest the plaintiff Penn may have in or to the $6,000 must accrue to him on account of the lease between him and Hubbell and McMartin. All of these contracts, conveyances and leases are made subject to the pipe line company easement and the option therein contained. The grantors of the easement and their subsequent grantees are legally bound to convey the entire title to the pipe line company if the pipe line company exercises its option to purchase, as it has done in the instant case. Such grantors and their subsequent grantees are also legally bound to preserve vertical support for the entire

strip twenty rods wide. The lease acquired by the plaintiff Penn was to the coal underlying the described quarter section and always subject to the pipe line easement. If, then, the coal underlying the twenty rod strip can only be removed by the process of strip mining, as conclusively shown by this record, and if by such process the vertical support is destroyed, then it is fair to assume that the coal under the surface in the twenty rod strip was not included in any of the mining leases. The appellant has some involved theory that by reason of his right under the lease to mine coal by the strip mining method that his lease in effect vested in him the full title to the real estate, and that his conveyance is necessary to vest in the pipe line company the fee title to the twenty rod strip in question. We cannot follow the appellant in such contention. If such position is sound, then a gold deposit lying one-thousand feet under the surface or an oil reservoir lying four or five thousand feet under the surface would belong to him notwithstanding any reservations or limitations in the lease. It must therefore be concluded that the plaintiff has no right, interest, or title in the quarter section here involved other than the right to mine coal as acquired by him in his lease with Hubbell and McMartin, and that such right does not extend to the twenty rod strip included in the pipe line company easement; and that therefore he has no title to convey to the pipe line company and is not entitled to the purchase price or any part thereof.

Now, considering the other question involved, the backfilling. The record shows conclusively that plaintiff, appellant, Penn leased the premises for the purpose of removing coal therefrom with both actual and constructive notice of the terms and conditions contained in the existing right of way easement to the pipe line company. The record also shows that Penn was advised by the pipe line company that it would exercise its option to purchase the twenty rod strip, prior to the time that Penn encroached upon the twenty rod strip or made any excavations thereon, and it follows that whatever excavations were made thereon was with full knowledge on the part of the plaintiff Penn that it was contrary to the terms of the lease under which he was in possession of said premises. Penn knew of the right of the pipe line company to exercise its option to purchase the twenty rod strip at any time a strip mine was started on the north eighty acres of land, and he also knew that until

such election was made he had no right to proceed with his mining operations if in so doing the pipe line company's rights would be affected. A strip mine was opened on the north eighty of the quarter section the latter part of April 1937, but no excavations were made on the twenty rod strip until late in June, and no coal was removed therefrom until the latter part of August 1937. Penn had personal knowledge of the right of the pipe line company to make its election to purchase and he had also agreed, according to the undisputed record, that no cut should be made in the twenty rod strip until the pipe line company had time to make its election, but regardless of such knowledge and agreement the plaintiff, appellant, did cut into the twenty rod strip some time late in June, and after the pipe line company had made its election, and commenced to remove coal therefrom by the strip mining method.

There can be no question but what the pipe line company is entitled, upon payment of the $6,000 purchase price, to a conveyance of the fee of the twenty rod strip with excavations thereon back-filled so as to restore the vertical support and surface of the twenty rod strip. It is conceded by both the plaintiff and the intervenors that the back-fill must be made. Plaintiff offers to make it in the event that he is awarded the $6,000 purchase price, and intervenors concede that they should make, or cause it to be made, before they are entitled to receive the $6,000 purchase price; but intervenors insist that they should have judgment against the plaintiff for the necessary cost of making said back-fill.

The trial court found and decreed, as we have indicated, that the plaintiff, appellant, has no title to convey to the pipe line company and is not entitled to the purchase price of said twenty rod strip, and that the intervenors are entitled to the purchase price upon the making and delivery of conveyances of the twenty rod strip to the pipe line company, and the back-filling of the excavations existing on the said twenty rod strip. The trial court further found that the plaintiff Penn should be required to make the back-fill in question, and in the event that he did not so do within a prescribed time judgment should be entered against him for the sum of $1,500, which the record shows was the approximate cost of making the back-fill. The record further shows that the plaintiff did not make the back-

fill at all, and that judgment was entered against him in favor of the intervenors for the amount above indicated.

We can find no error in the court's finding and decree and an affirmance must follow.—Affirmed.

SAGER, C. J., and MITCHELL, DONEGAN, KINTZINGER, HAMILTON, RICHARDS, STIGER, and MILLER, JJ., concur.